Dorothy ELLIS, Plaintiff,

v.

John RITCHIE, JR., Executive Director,
Virginia Housing Development
Authority, Defendant.

Civ. No. 92–608–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 14, 1992.

that VHDA did not have the authority under the federal regulations relied on to terminate her benefits; and (2) that the procedures followed in connection with VHDA's decisionmaking process did not comply with established regulatory procedures and thereby violated plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution.

Contemporaneously with the filing of the complaint, plaintiff filed a motion for a preliminary injunction. This motion was denied as moot, following VHDA's agreement to continue payment of Section 8 benefits pending resolution of this action. Thereafter, defendant filed a motion to dismiss. At oral argument on this motion, the Court advised the parties that defendant's motion would be converted to a motion for summary judgment pursuant to Rule 12(b), Fed.R.Civ.P., and directed the parties to file supplemental briefs. The parties complied. This matter is now properly before the Court on cross-motions for summary judgment. For the reasons stated herein, the Court concludes that summary judgment must be granted in favor of the plaintiff and the case remanded to the agency for further action.

Dorothy Ellis, pro se.

Michael Allen, Legal Services of Northern Virginia, Manassas, Va., for plaintiff.

Carl F. Bowmer, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

#### I.

This 42 U.S.C. § 1983 case arises from the decision of the defendant, John Ritchie, Executive Director of the Virginia Housing Development Authority ("VHDA"), to terminate plaintiff's participation in a federally subsidized rental housing assistance program. Plaintiff challenges the validity of this decision on two principal grounds: (1)

#### II.

Resolution of the questions presented in this case requires a review of the Section 8 Existing Housing Program. This program, established by Section 8 of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437 *et seq.*, provides rental housing assistance to low-income families. The purpose of this program is to provide low-income families safe, decent, and sanitary housing. Program administration is governed by regulations promulgated by the United States Department of Housing and Urban Development ("HUD") pursuant to its rule-making authority under 42 U.S.C. §§ 1437c and 1437d (1974).

VHDA administers all federally subsidized housing programs in the state of

Virginia, including the Section 8 program. Applications for participation in the Section 8 program are reviewed by VHDA and its local administrative agents, and VHDA renders its eligibility decisions based on this review. Once an application is approved, VHDA issues the applicant a Certificate of Family Participation. Receipt of this certificate makes an applicant a "participant" within the meaning of Section 8.

Each participant is responsible for locating a private landlord willing to enter the program. Once he or she does so, the participant and landlord enter into a lease agreement. At the same time, the landlord enters into a Housing Assistance Payments Contract ("HAP Contract") with VHDA. According to this arrangement, the Section 8 participant pays a portion of the contract rent calculated in accordance with program regulations, while VHDA pays the balance pursuant to the HAP contract with the landlord.

Section 8 participants are required periodically to complete a recertification process to assess continuing eligibility and to determine the amount the participant will be required to contribute as rent. *See* 24 C.F.R. § 813.109. This process involves the submission of information and documentation relating to such matters as the nature and amount of family assets, and family size and composition. Participants are subject to sanction by VHDA for failure to comply with the recertification process. These sanctions are governed by HUD regulations and may include termination of the participant's eligibility for rental assistance benefits. 24 C.F.R. § 882.210 *et seq.*

The material events underlying the complaint are not disputed. Plaintiff, Dorothy Ellis, is a forty-seven year old single mother with one dependent child who resides in Manassas, Virginia. She has been a participant in a Section 8 housing program administered by VHDA since August 15, 1983. On March 7, 1991, Sylvia Haydash,

the VHDA's local administrative agent for the City of Manassas visited plaintiff's home in order to make a routine inspection and to complete the necessary paperwork for her annual Section 8 recertification. In the course of this visit, Haydash discovered two letters lying on the steps to plaintiff's home, one of which was addressed to plaintiff from the IBM Credit Union. Plaintiff acknowledged that the letters belonged to her.

Thereafter, plaintiff completed the required recertification paperwork. In doing so, she crossed out Section III of HUD Form 50059 that requested a statement of the participant's assets. According to Haydash, plaintiff stated: "If I had a bank account I wouldn't be on Section 8." Plaintiff also signed the Tenant's Certification Section of the HUD Form after Haydash had read to her the Warning Statement concerning the consequences of giving false information.[1] Following her visit to plaintiff's home on March 7, Haydash verified the existence of a bank account at the IBM Credit Union in plaintiff's name. A bank official informed Haydash that the account had been opened on June 9, 1986.

On March 26, 1991, Haydash and Hannah Senft, another VHDA official, met with plaintiff to discuss the IBM bank account. Plaintiff stated that she had opened the account for a friend, Silas Jackson, who had asked her to manage his money because he was illiterate, and because his family had been taking advantage of him. Plaintiff further stated that she had not disclosed the existence of the account to VHDA because the money did not belong to her, and VHDA had no interest in knowing the nature of Mr. Jackson's assets. This bank account remained in the name of the plaintiff until May 1, 1991; at this time, the names of Jackson and Leslie Cole, plaintiff's daughter, were added to the account.

---

1. The Tenant's Certification of HUD Form 50059 reads as follows:

TENANT(S)' CERTIFICATION. I/We certify that the information in Parts II, III, and IV of this Form are true and complete to the best of my/our knowledge. I/We understand that we can be fined up to $10,000, or imprisoned up to five years, or lose the subsidy HUD pays and have my/our rent increased, if I/we furnish false or incomplete information.

On April 21, 1991, plaintiff's case was submitted for review to Shelley Hamlin, Housing Management Officer for VHDA. Plaintiff was told that Hamlin would have to verify her statements regarding the account, and that Jackson would have to supply proof that the deposits coincided with his pay stubs. On May 10, 1991, Jackson submitted incomplete records from the IBM Credit Union covering certain periods of time. These records reflected that plaintiff and her daughter had deposited paychecks into, and made withdrawals from, the account.

VHDA sent plaintiff a preliminary notice of termination of Section 8 benefits on January 29, 1992. This letter, signed by Shelley Hamlin, stated that VHDA had been informed that plaintiff had "failed to report [her] household's correct income/assets as required by Program regulations." The letter further stated that, as a result of this non-disclosure, plaintiff had received an overpayment of $36.00 in benefits over a six-year period. Reimbursement of this amount was requested. In addition, the letter notified plaintiff that she could request an informal hearing on this matter within ten days of its receipt. Plaintiff promptly requested such a hearing and forwarded a $36.00 check to reimburse VHDA for the benefits overpayment.

An informal administrative hearing was held on March 11, 1992. Plaintiff appeared and was represented by counsel. In the course of this hearing, plaintiff repeated her explanation for not disclosing the existence of the IBM bank account, affirming again that the money in the account belonged to Mr. Jackson. Plaintiff further stated that she had not previously understood that use of her name and social security number to establish the account represented ownership of the account. In addition, plaintiff offered explanations for the various deposits and withdrawals from the IBM account.

On March 19, 1992, VHDA issued a final administrative decision terminating plaintiff's eligibility for rental assistance benefits under the Section 8 program. This decision "was based upon the fact that from the period of 1986 to present [plaintiff] had a savings account with the IBM Credit Union and failed to report that [she] had such an account." This decision letter further stated that "[b]ased upon the information presented at the hearing," plaintiff was "in violation of the Section 8 program when [she] failed to report the IBM Credit Union Savings Account." The letter advised plaintiff that termination of her participation in the program would become effective as of April 30, 1992. Plaintiff subsequently filed this action.

### III.

■ Analysis properly begins with a consideration of the appropriate standards for judicial review of VHDA's decision to terminate plaintiff's Section 8 benefits. The scope of this review is governed by the provisions of the Administrative Procedure Act set forth at 5 U.S.C. §§ 706(2) *et. seq.* Two provisions, 5 U.S.C. § 706(2)(A) and 5 U.S.C. § 706(2)(D), are relevant. In essence, § 706(2)(A) articulates the standard of review applicable to determining the validity of the termination decision itself. By contrast, § 706(2)(D) sets forth the standard of review that applies in determining the adequacy of the procedures followed in reaching the administrative decision.

More specifically, under 5 U.S.C. § 706(2)(A), the courts are required to set aside an agency decision when this decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* This review standard has two prongs. The first prong relates to a court's review of the connection between the administrative agency's factual findings and its final decision. In this regard, a court must ascertain whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). The court "is not empowered to substitute its judgment for that of the agency," *Virginia Agr. Growers Ass'n, Inc. v. Donovan*, 774 F.2d 89, 93 (4th Cir.1985) (quoting *Citizens to Preserve*

*Overton Park, Inc. v. Volpe,* supra 401 U.S. at 416, 91 S.Ct. at 824), but must simply determine if a rational basis exists for the agency's decision. *Reynolds Metals Co. v. United States EPA,* 760 F.2d 549, 558 (4th Cir.1985). No analysis under this first prong is required here as it is the second prong of § 706(2)(A), relating to whether the decision is "otherwise not in accordance with law," that is dispositive here. Under this test, courts are obligated to examine the administrative record to ascertain if the administrative agency has exceeded the scope of its statutory authority. In this case, the Court must determine whether the HUD regulations relied on by the VHDA grant the agency the authority to terminate plaintiff's participation in the Section 8 program for the reasons stated by the agency. If not, the VHDA's decision is unlawful.

The standard of review governing the Court's examination of the *procedures* followed by an agency in making its final administrative decision is set forth at 5 U.S.C. § 706(2)(D). This provision requires reviewing courts to set aside agency actions reached "without observance of procedure required by law." As such, the decisionmaking process of an administrative agency must conform to both (1) procedural requirements prescribed by applicable statutes or regulations; and (2) the constitutional requirements of due process. Here, the Court must specifically determine if VHDA's actions in reaching its final decision complied with the prescribed procedural framework and if these actions violated plaintiff's due process rights.[2]

### IV.

◼ VHDA's discretion to deny or terminate Section 8 assistance to a participant is defined and limited by federal regulations. *See* 24 C.F.R. § 882.210. Termination decisions must be made in accordance with these regulations. *See e.g., Hill v. Richardson,* 740 F.Supp. 1393 (S.D.Ind.1990); *Holly v. Housing Authority of New Orleans,* 684 F.Supp. 1363 (E.D.La.1988). Where an administrative decision, purportedly based on a specific regulatory provision, does not comport with that regulation, the decision is "otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

◼ In this case, it is undisputed that VHDA relied on 24 C.F.R. § 882.210(d)(2) in terminating plaintiff's benefits. That provision permits termination of benefits for a violation of a "family obligation."[3]

---

2. Plaintiff also contends that she is entitled to review of the agency decision to determine whether it was supported by "substantial evidence," pursuant to 5 U.S.C. § 706(2)(E). Yet, this standard does not apply to cases where, as here, the decision resulted from an *informal* administrative hearing. The "substantial evidence" test only applies when the agency's actions are taken pursuant to the rule-making provisions of 5 U.S.C. § 553, or when the agency's action is based on a public adjudicatory hearing conducted in accordance with the standards set forth in 5 U.S.C. §§ 556–557. *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971). Thus, the appropriate standards of review are those found in §§ 706(2)(A) and 706(2)(D).

3. 24 C.F.R. § 882.210(d)(2) provides in pertinent part:

> § 882.210 Grounds for denial or termination of assistance.
> 　　*　　*　　*　　*　　*　　*
> (d) In the following cases, the PHA may terminate housing assistance payments which are being made on behalf of the participant under an outstanding Contract:
> 　　*　　*　　*　　*　　*　　*

> (2) If the participant has violated any family obligation under Section 8 Existing Housing Program as stated in § 882.118.

The provision immediately preceding § 882.210(d)(2) permits the agency to terminate a participant if she "has committed any fraud in connection with any federal housing program." *See* § 882.210(d)(1). But the VHDA did not then, nor does it now, rely on this provision. Instead, VHDA, in its briefs, has emphasized that the termination did not rest on a finding of fraud. Specifically, VHDA stated that:

> Under the circumstances, *no separate showing of fraud is required. It need only be shown that Ms. Ellis failed to furnish true and complete information regarding her income and assets.* By failing to disclose the existence of the IBM bank account as required, plaintiff violated a Family obligation to supply true and complete information under § 882.118, which failure constitutes grounds for termination under § 882.210(d)(2). (emphasis added)

In addition, defendant's counsel stated in oral argument before this Court that plaintiff's benefits "were not denied pursuant to [§ 882.210](d)(1), which is the fraud section ... VHDA

For six years, plaintiff failed to disclose the existence of a bank account in her name on the standard forms submitted to VHDA in connection with the annual recertification process. VHDA contends that this failure violated the "family obligation" provision defined at 24 C.F.R. § 882.118(a)(1), because this provision requires participants to furnish complete and wholly truthful information on the forms submitted to VHDA in connection with recertification. Plaintiff, on the other hand, contends that she fulfilled the requirements of this provision by submitting all of the required paperwork associated with recertification. Thus, the question is whether plaintiff's failure to disclose the existence of the bank account is a violation of this particular "family obligation" provision.

A search for the answer to this question properly begins with an examination of the plain language of the pertinent regulation, which provides as follows:

§ 882.118   Obligations of the Family [4]

(a) The family must:

(1) *Supply such certification, release, information, or documentation as PHA or HUD determine to be necessary, including* the submission of Social Security Numbers and verifying documentation (as provided by 24 CFR part 750), the submission of signed consent forms for the obtaining of wage and claim information from State Wage Information Collection agencies (as provided by 24 CFR part 760), and *submissions required for an annual or interim reexamination of family income and composition.*

Significantly, the regulation makes no mention of any requirement that information or documentation submitted to the agency be *"true"* or *"complete."* Rather, the provision states only that a participant must *"supply"* any paperwork HUD or the local public housing agency deems necessary, including documentation required for annual or interim reexaminations. Nothing in the regulation specifies the content or quality of the information supplied for the recertification; it merely requires the *"submission"* of such information.[5] Given this, § 882.118(a)(1)'s "family obligation" provision only requires compliance with the *process* associated with annual recertification. Submission of fraudulent information violates other regulatory provisions, but not the "family obligation" regulation relied on by VHDA.

■   An administrative construction of the regulations further supports this conclusion. As noted above, the HUD regulations governing the administration of the Section 8 program provide that fraud and the violation of a "family obligation" are two, separate and independent bases for termination of rental assistance benefits. *See* 24 C.F.R. §§ 882.210(d)(1) and 882.-210(d)(2). Given this established regulatory scheme, the "family obligation" provision of § 882.118(a)(1) cannot be broadly interpreted to permit VHDA to terminate a Section 8 participant's benefits for any and all errors or omissions arising from the failure to submit true or complete information. Since 24 C.F.R. § 882.210(d)(2) permits a public housing agency to terminate benefits for any violation of a "family obligation," an interpretation § 882.118(a)(1)

---

did not proceed on fraud." VHDA clearly proceeded under § 882.210(d)(2) and *not* § 882.-210(1) in terminating plaintiff's benefits. *See also Affidavit of Louise B. Woods,* May 14, 1992, at p. 2 ("decision to terminate ... made pursuant to provisions of 24 C.F.R. § 882.210(d)(2) for violation of a Family obligation ...").

The remaining two provisions relating to termination of benefits, §§ 882.210(d)(3) and 882.-210(d)(4), relate to breach of the HAP Contract and violation of a contract of participation in connection with the Family Self–Sufficiency Program, respectively. Neither of these provisions are apposite here.

**4.**   24 C.F.R. § 882.118 provides a list of both affirmative family obligations and prohibited

activities. Section 882.118(b)(2), which states that a participating Family "shall not ... [c]ommit any fraud in connection with the Section 8 Existing Housing Program," was not relied on by VHDA. In fact, as noted above, VHDA did not undertake to prove fraud on plaintiff's part and made no factual finding relating to fraudulent intent.

**5.**   In fact, the other parts of the regulation, which do not specifically relate to recertification, also require only the *"submission* of Social Security Numbers" and the *"submission* of signed consent forms."

that implies a requirement of truth and completeness for the submission of documentation would effectively permit the agency to terminate participants who make even trivial or minor errors in filling out required forms. Such an interpretation is unreasonable as it would render the fraud provision of § 882.210(d)(1) superfluous and effectively relieve a public housing agency of the need to make a factual finding that a participant actually intended to deceive or defraud the agency. Indeed, it would permit the agency to rely solely on § 882.210(d)(2) in terminating benefits for both *unintentional* and *intentional* errors and omissions made in connection with recertification. Given that HUD promulgated § 882.210(d)(1) and 882.210(d)(2) on the same date,[6] the agency could not have intended that the latter provision swallow the former.

Yet additional support for this conclusion comes from an examination of the *Public Housing Agency Administrative Practices Handbook for the Section 8 Existing Housing Program 7420.7* (November, 1979) ("HUD Handbook"). When construing an administrative regulation, "[t]he ultimate criterion is the administrative interpretation, which becomes of controlling weight, unless it is plainly erroneous or inconsistent with the regulation." *Thorpe v. Housing Authority of City of Durham,* 393 U.S. 268, 276, 89 S.Ct. 518, 523, 21 L.Ed.2d 474 (1969) (quoting *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)); *Frederick County Fruit Growers Ass'n v. Marshall,* 436 F.Supp. 218, 225 (W.D.Va.1977). Accordingly, in interpreting the "family obligation" provision of § 882.118(a)(1), it is appropriate to look to the HUD Handbook for guidance. In doing so, this Court does not reach the issue of whether the HUD Handbook is legally binding on the VHDA. For even if a HUD Handbook has no binding force, it is "entitled to notice so far as it is an official interpretation of statutes or regulations with which it is not in conflict." *Burroughs v. Hills,* 741 F.2d 1525, 1529 (7th Cir.1984) (per curiam) *cert. den. sub. nom. Burroughs v. Pierce,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985).

Paragraphs 9–11 and 9–12 of the HUD Handbook are consistent with, and supplement, the applicable HUD regulations at issue in the present case. They outline the separate and independent procedures to be used by public housing agencies in dealing with "administrative errors and omissions" and intentional "program abuse." In this regard, the Handbook clearly differentiates between errors and omissions arising from non-fraudulent behavior and those arising from fraud.[7]

6. 24 C.F.R. §§ 882.210(d)(1) and § 882.-210(d)(2) were adopted as final rules on May 10, 1984. *See* 49 Fed.Reg. 12,215 (1984).

7. Paragraph 9–11 of the HUD Handbook outlines guidelines for procedures relating to the unintentional errors and omissions. This paragraph provides in relevant part:

> 9–11 ADMINISTRATIVE ERRORS AND OMISSIONS. It is crucial that the PHA establish and maintain a high degree of accuracy in administering its program. From time to time minor administrative errors or omissions may be discovered which require immediate PHA action. Administrative errors, omissions, or mistakes by PHA staff, owners or *tenants* may include:
>
> * * * * * *
>
> *Tenant Errors and Omissions* (Examples)
> —omission of a particular asset because of lack of information
> —miscalculation of income
>
> * * * * * *
>
> b. *Cures.* If errors or omission are discovered, the PHA must immediately correct the deficiency as follows:
> (1) For errors which affect the tenant's share of the contract rent the correct payment (and subsequent calculation of the correct housing assistance payment to be provided the owner) must immediately be established by an amendment to the lease and HAP Contract. In addition:
>
> * * * * * *
>
> (c) *if the tenant's share of the rent was incorrectly established too low due to tenant error or omission, the PHA may require repayment by the family within a reasonable period of time and, if not repaid, may terminate the assistance for the family.*
> (emphasis added)

Paragraph 9–12, on the other hand, concerns intentional program abuse and fraud. This paragraph provides in relevant part:

> 9–12. PREVENTION AND CURE OF PROGRAM ABUSE. The PHA must take affirma-

Particularly pertinent here is Paragraph 9–11. This paragraph may be read to supplement the "family obligation" provision of § 882.118(a)(1) by suggesting procedures for handling unintentional mistakes relating to annual recertification, such as the failure to disclose information.[8] By contrast, Handbook Paragraph 9–12 emphasizes the seriousness of fraudulent behavior and requires that a public housing agency investigate such allegations in a methodical, systematic fashion.[9] In so doing, this provision supplements both the fraud-based "family obligation" provision of § 882.-118(b)(2) and the fraud-based termination provision of § 882.210(d)(1).[10]

That the Handbook was promulgated five years before the effective date of §§ 882.210(d)(1) and 882.210(d)(2) does not render its provisions inconsistent with HUD regulations. They are not, in fact, inconsistent. Indeed, HUD, it may be assumed, would have repealed these earlier provisions were they inconsistent with the regulatory scheme subsequently established in 1984. Confirmation of the continuing vitality of these Handbook provisions is found in the VHDA's own administrative policies, Nos. 1220 and 1221, which were promulgated on January 1, 1991 and incorporate the HUD Handbook's distinction between "unintentional omissions or errors" and "intentional program abuse." These VHDA policies provide additional support for an administrative construction of the regulations that prohibits agency reliance on § 882.210(d)(2) in terminating Section 8 participants for both fraudulent and non-fraudulent behavior.[11]

tive steps to prevent the occurrence of *intentional and willful program abuse, intentional misrepresentative or fraudulent activity* by owners and families as well as by PHA employees. In addition, if evidence of program abuse by any of these parties is discovered by the PHA, it must take immediate steps to cure the situation to maintain PHA credibility concerning enforcement of program requirements.

\* \* \* \* \* \*

c. *Program Abuse by Tenants.* Potential program abuse by participating families includes:
—*misrepresenting* income, assets, and deductions
—misrepresenting family composition
—initiating and participating in bribes or other illegal activities.

\* \* \* \* \* \*

(2) *Cures.*
(b) *PHA Administrative Remedies.* If the PHA has obtained sufficient evidence through its assessment ... to determine that the family is abusing the program and receiving a benefit to which it is not entitled, the PHA must immediately take actions necessary to terminate the abuse, such as:

\* \* \* \* \* \*

2 For cases involving assistance overpaid on behalf of the family because of discrepancies in information furnished by the family, the PHA must terminate the assistance for the family for a period of time commensurate with the seriousness of the offense. If the PHA has sufficient evidence that the family did not intentionally engage in program abuse, the PHA must require repayment but does not necessarily need to terminate assistance. (See Paragraph 9–11b(1)(c)).

8. Under "Tenant Error and Omissions," Paragraph 9–11 provides the following examples: "omission of a particular asset because of lack of information" and "miscalculation of income."

9. Examples of "Program Abuse by Tenants" provided by Paragraph 9–12 include: *"misrepresenting* income, assets, and deductions" and *"misrepresenting* family composition."

10. It is unclear why the HUD regulations prohibit fraud in two separate regulations. In any event, neither provision can be fairly read to permit an agency to terminate benefits without a finding of fraudulent intent.

11. VHDA Policy 1220, relating to "Program Omissions or Errors" provides in relevant part:

If unintentional omissions or errors are found that affect a Family's share of rent, the Family or Owner may be required to reimburse VHDA all excess benefits received because of the unintentional omission or error.
VHDA Policy 1221, relating to "Program Abuse," outlines procedures that the agency must follow in dealing with potential fraud and intentional misrepresentation. This Policy provides in relevant part:
4. Intentional program abuse by the Family may fall into one or more of the categories listed below:

\* \* \* \* \* \*

B. Overpayment because of discrepancies in information—*If the Family received excess benefits brought about by discrepancies in information provided by the Family, they must be terminated for a period of time commensurate with the seriousness of the offense (in most cases the length of time the fraud was committed)* as determined jointly between the HMO and Assistant Director, as well as being required to pay back the amount of excess

In sum, the "family obligation" provision of § 882.118(a)(1) simply requires a Section 8 participant to comply with the recertification *process* of submitting required documentation. Since plaintiff has complied with all requests to *submit* information to VHDA officials, plaintiff fulfilled her "family obligation" pursuant to § 882.-118(a)(1). Although it is undisputed that plaintiff failed to disclose the existence of a bank account, the VHDA made no findings as to whether she did so with intent to deceive. It proceeded instead on a non-fraud basis in terminating her participation in the program. Thus, VHDA violated the applicable HUD regulations in terminating plaintiff's Section 8 benefits for violation of this provision.

## V.

█ Having concluded that VHDA did not comply with HUD regulations in terminating plaintiff's Section 8 benefits, the Court need not reach plaintiff's claims that VHDA did not adhere to proper procedures

in connection with its decisionmaking process. The Court does so, however, because these claims represent a separate and independent basis on which the Court could rely in setting aside. VHDA's termination decision.

HUD regulations require VHDA to follow certain procedures when the agency decides to terminate a participant's Section 8 benefits. Specifically, VHDA must provide participants an opportunity for an informal hearing to review this decision. In the present case, it is undisputed that VHDA held such a hearing. At issue is whether VHDA's actions complied with requirements set forth at 24 C.F.R. § 882.216 *et. seq.* governing the conduct of informal hearings.[12] If not, VHDA's termination decision was reached "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

Plaintiff here received adequate, written notice of the termination decision. This notice contained a brief statement of the

benefits received. A letter must be sent to the Family notifying them that they will be terminated for a specified term, of the reasons for the termination, of the amount of money they must repay, that they will be placed on Inactive Status until the amounts owed are repaid, and that they may request an informal hearing within ten days of the date of the letter (emphasis added).

A comparison of the language of this Policy with that contained in HUD Handbook provision 9–12 reveals that these provisions are consistent with one another. *See* HUD Handbook provision 9–12(b)(2), note 5, *supra.*

12. These regulations provide in relevant part:
§ 882.216 Informal review or hearing.

\* \* \* \* \* \* \*

(3)(i) The PHA shall give the participant prompt written notice of a decision [to terminate or deny benefits]... The notice shall contain a brief statement of the reason for the decision. The notice shall state that, if the participant does not agree with the decision, the participant may request an informal hearing on the decision, and shall also state the time by which the request for an informal hearing must be made by the participant.

\* \* \* \* \* \*

(4) If the PHA has decided to terminate housing assistance payments ... the participant shall be afforded the opportunity for such informal hearing before the termination of housing assistance payments.

(5) In all cases where a hearing is required ... the PHA shall proceed with a hearing in a reasonably expeditious manner upon the request of the participant.

(6) The PHA shall adopt written procedures for conducting informal hearings for participants in the PHA's Section 8 program. The PHA hearing procedures shall comply with the following:

(i) The hearing may be conducted by any person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of such person.

(ii) At its own expense, the participant may be represented by a lawyer or other representative.

(iii) The person who conducts the hearing may regulate the conduct of the hearing in accordance with the PHA hearing procedures.

(iv) The PHA and the participant shall be given an opportunity to present evidence, and may question witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.

(v) The person who conducts the hearing shall issue a written decision stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the participant shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the participant.

reasons for the decision, stated that plaintiff could request an informal hearing, and noted the time by which such a request had to be made. *See* 24 C.F.R. § 882.216(b)(3). Following plaintiff's timely request, an informal hearing was promptly held. A VHDA official who had not made or approved the decision under review conducted the hearing. At this hearing, plaintiff was represented by counsel and had an opportunity to present evidence. *See* 24 C.F.R. § 882.216(b)(6). VHDA issued a written final decision following the hearing that briefly stated the reasons for the decision.[13] *See* 24 C.F.R. § 882.216(b)(6)(v). Thus, review of the administrative record reveals that VHDA complied with all applicable procedures.

From this, it follows that the due process claim must fail, for it is well established that procedural due process refers to the fundamental requirement that a party have the opportunity to be heard at a "meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). In this case, the established procedures clearly provide for a meaningful, albeit informal, hearing process. *See* 24 C.F.R. § 882.216 *et. seq.* Given VHDA's compliance with these procedures, plaintiff received procedural due process. *See, e.g., Fishback v. United States*, 519 F.Supp. 190 (D.New Mexico 1981) (holding requirements of procedural due process met where administrative agency complied with established procedures).

## VI.

For the reasons stated above, the Court concludes that defendant's decision to terminate plaintiff's Section 8 benefits did not comport with the applicable federal regulations and must be set aside. Although VHDA followed the established procedures in making its decision, VHDA lacked the authority to terminate plaintiff for violation of the "family obligation" provision set forth at 24 C.F.R. § 882.118(a)(1) because plaintiff complied with this particular requirement.

The Court, however, expresses no opinion on whether defendant could have terminated plaintiff for fraud, pursuant to its authority under 24 C.F.R. § 882.-210(d)(1). As noted above, defendant did not base its final decision on this provision. Rather, as defendant asserted in pleadings and at oral argument, VHDA proceeded under its presumed authority to terminate plaintiff for violation of a "family obligation." VHDA made no factual findings as to the plaintiff's fraudulent intent, and this question of intent is a disputed factual matter not properly before this Court for review on summary judgment. Even assuming the current record supports termination for fraud, the Court cannot substitute its judgment for that of VHDA and render a termination decision. *See Bunyard v. Hodel*, 702 F.Supp. 820, 824 (D.Nev.1988) (quoting *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir.1984)) ("A reviewing court must judge the propriety of an agency's actions solely on the grounds invoked by the agency.")[14]

---

**13.** Plaintiff's contention that the hearing official provide a detailed explanation as to the "findings of fact" or "conclusions of law" that he relied on in making this decision is unfounded. The plain language of 24 C.F.R. § 882.-216(b)(6)(v) provides simply that, "[t]he person who conducts the hearing shall issue a written decision briefly stating the reasons for the decision." *See* § 882.216(b)(6). Here, the final administrative decision briefly stated that the decision to terminate plaintiff had been made because she failed to report the IBM savings account.

**14.** Should VHDA now choose to proceed on a fraud basis, however, plaintiff must be afforded another informal hearing before the agency may terminate her under § 882.210(d)(1). To be sure, there is a strong public policy interest in insuring the integrity of the administration of a federally subsidized housing program. Yet agencies such as the VHDA must comply scrupulously with federal regulations governing the administration of the Section 8 program in order to safeguard the rights of the economically disadvantaged families who participate in the program. These participants are powerless except for the rights they derive from the regulations. Thus, if VHDA believes plaintiff has committed fraud, then it must squarely face this

■ Where, as here, an administrative agency's failure to comply with applicable C.F.R. regulations constitutes conduct not in accordance with the law, the proper remedy is to vacate the agency's decision at issue and remand the matter for action in accordance with the applicable regulations. *Bunyard*, 702 F.Supp. at 822. *See also e.g., Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir.1988); *American Petroleum Inst. v. Environmental Protection Agency*, 787 F.2d 965, 976–77 (5th Cir.1986); *Pollgreen v. Morris*, 770 F.2d 1536, 1544–45 (11th Cir.1985). Accordingly, the defendant's final administrative decision to terminate plaintiff's Section 8 benefits is vacated, and this matter is remanded to VHDA for action consistent with this opinion.

An appropriate order will issue.

issue and proceed in accordance with HUD reg-     ulations specifically relating to fraud.