DECISION. *Page 2 
{¶ 1} Plaintiff-appellant Melinda Smith appeals the judgment of the Hamilton County Court of Common Pleas affirming the decision of defendant-appellee Hamilton County Department of Community Development ("DCD") to revoke her Section 8 housing voucher because she had claimed her two sons as household members when she did not have legal custody of them. Because the common pleas magistrate erred as a matter of law by lowering DCD's burden of proof to terminate Smith's Section 8 housing voucher, and DCD had not satisfied the correct burden to demonstrate fraud, we reverse and remand.
 I. Section 8 Housing Vouchers {¶ 2} Smith is a participant in what was the Hamilton County Section 8 Housing Choice voucher program. (Hamilton County's Section 8 housing program has merged with the Cincinnati Metropolitan Housing Authority since the filing of this suit.) Under this federally subsidized program, participants may use their voucher with any private landlord who will accept the voucher and follow the United States Department of Housing and Urban Development's ("HUD") guidelines for rent and housing-quality standards.
 {¶ 3} Participants in the Housing Choice voucher program pay 30% of their income in rent, and the balance of the rent is paid directly to the landlord by HUD through the local public housing authority.[1] In this case, the local public housing *Page 3 
authority was DCD. The program also requires participants to report their income and household size so that the housing authority can determine the amount of their rent, the amount of the subsidy, and the size of the apartment that the family is eligible to receive.[2]
 II. Smith's Household Members {¶ 4} In 2000, Smith resided in Covington, Kentucky, with her two young sons, seven-year-old Mychael Crumes and one-year-old Keeshawn Smith. On July 27, Covington police responded to a call and found that her two children had been left alone at home and that the home was in a deplorable condition. Her children were removed from her home, and temporary custody of Mychael Crumes and Keeshaun Smith was granted to their maternal grandmother, Doris Smith. Smith was to obtain stable employment and locate appropriate housing before petitioning the Kentucky Cabinet for Family and Children to regain custody.
 {¶ 5} The children stayed with their grandmother for two weeks and then returned to live with Smith even though the state of Kentucky had not changed the custody order. They remained in Smith's physical custody until April 2003, when the state of Kentucky learned that the boys were living with Smith and returned Mychael and Keeshawn to their grandmother.
 {¶ 6} Because Smith realized that she needed to comply with the state of Kentucky's requirements before regaining legal custody of her children, she completed parenting classes and worked on a family reunification plan with her sons' *Page 4 
caseworker. Her sons began to stay with her on the weekends, on holidays, and during the summer.
 {¶ 7} Throughout this time, Smith was a participant in the Section 8 voucher program administered by the Covington Public Housing Authority. In November 2003, Smith ported or transferred her voucher to Hamilton County, Ohio. Smith ported to Hamilton County because she believed that there were better special-education programs for her son Keeshawn.
 {¶ 8} In the paperwork she filled out with the DCD, Smith listed her two sons as household members. Smith believed that even though she did not have legal custody of her sons, she had to list her sons as household members because they stayed with her every weekend, on holidays, and during the summer. Smith was approved for a two-bedroom apartment.
 {¶ 9} As part of the transfer process, Smith was also required to list her household income. At that time, the only source of household income was from her disabled son's Supplemental Security Income ("SSI") benefits, for which Smith was the payee. Smith was unable to work because she was recovering from surgery and had nerve damage in her leg due to her diabetes.
 {¶ 10} The state of Kentucky sent representatives to inspect her new housing and deemed that it was suitable housing for her sons. But in spite of her efforts, custody had not yet been returned to her.
 {¶ 11} In July 2004, Smith completed her annual recertification with the DCD's Housing Choice voucher program. She again listed her sons as household members and reported her only income as her son's SSI benefits. *Page 5 
 {¶ 12} Three months later, the United States Social Security Administration notified Smith that she could not be the payee for Keeshawn's SSI benefits because she did not have legal custody of him. Smith then notified DCD that there was a change in her household income. When DCD's housing specialist Regina Robinson learned that Smith did not have the right to be her son's payee, she requested more information on the legal custody of Smith's children. Smith then submitted paperwork demonstrating that Smith's mother had legal custody of the children.
 {¶ 13} In January 2005, DCD sent Smith a letter notifying her that her voucher had been terminated. The letter listed the reason for termination as "[c]hildren are in the custody of their grandmother, in Covington, KY since November 2000, per submitted Court disposition. Not payee for sons [sic] SSI."
 {¶ 14} Smith was told that she was being terminated because she had listed her sons as household members in her July recertification. Essentially Smith was terminated because DCD believed that she had falsified her application to qualify for a two-bedroom apartment.
 {¶ 15} Smith requested a hearing to appeal the termination. In February 2005, DCD held an informal hearing where the hearing officer concluded that Smith had willfully defrauded the Housing Choice program and upheld the termination of her voucher.
 {¶ 16} Upon appeal to the Hamilton County Court of Common Pleas, a magistrate affirmed the decision of the administrative hearing officer. The magistrate noted that Hamilton County "need only show that Smith made inaccurate statements on her application and recertification to show that she was ineligible to receive a Section 8 housing voucher. Fraud or other form of intentional *Page 6 
misrepresentation is not relevant to the analysis." The trial court overruled Smith's objections to the magistrate's decision and affirmed the termination of the voucher. Smith now appeals.
 III. Standard of Review {¶ 17} The Ohio Supreme Court has construed R.C. 2506.04 so that the common pleas courts and the courts of appeals apply different standards of review for administrative appeals.[3] The common pleas court considers the whole record, "including any new or additional evidence submitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence."[4]
 {¶ 18} But the standard of review to be applied by the court of appeals is more limited.[5] As the court noted in Henley v. YoungstownBoard of Zoning Appeals, "[t]he statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh the 'preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts *Page 7 
must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."[6]
 IV. Smith's Appeal {¶ 19} In her appeal, Smith argues that the trial court erred in affirming the decision of the administrative agency to terminate her Section 8 voucher by (1) holding that Hamilton County needed only to show that Smith had made inaccurate statements on her application and recertification to terminate her voucher; (2) finding that Smith made inaccurate statements on her application and recertification when that was not supported by substantial evidence; (3) concluding that Smith's two sons could not have "legally resided" with her; (4) ruling that inaccurate statements were enough to warrant termination under DCD's administrative plan; (5) failing to consider all the consequences that the termination would have on the family; and (6) in allowing Hamilton County to cross-examine Smith with alleged prior bad acts for which there was no basis.
 {¶ 20} The issue in this case is whether DCD had the authority to terminate Smith's Section 8 housing voucher because she had listed her two sons as household members when she did not have legal custody of them. Hamilton County contends that DCD rightfully did so under Section 982.552(c)(1)(iv), Title 24, C.F.R, which provides that a "PHA [Public Housing Authority] may at any time deny program assistance for an applicant, or terminate program assistance for a participant for any of the following grounds: * * * (iv) If any member of the family has committed fraud, bribery, or any other corrupt or criminal act in connection with any Federal housing *Page 8 
program." Hamilton County essentially believes that Smith fraudulently claimed her sons as living in her home to enjoy the benefit of a larger apartment and a larger rent subsidy. We are not inclined view Smith's motives so pessimistically.
 V. Grounds for Terminating a Section 8 Housing Voucher {¶ 21} We begin with the magistrate's statement of the law that "Hamilton County need only show that Ms. Smith made inaccurate statements on her application and recertification to show that she was ineligible to receive a Section 8 housing voucher." The magistrate seems to have gleaned this interpretation from Section 982.551(b)(4), (h)(2), and (h)(3), Title 24, C.F.R.
 {¶ 22} The obligations of participants in a Section 8 Housing Choice voucher program are listed in Section 982.551, Title 24, C.F.R. Under Section 982.551(b)(4), the code requires that a family must supply any information that the public housing authority determines is necessary for the administration of the housing program, and that the "information supplied by the family must be true and complete." Section 982.551(h)(2) states that "the composition of the assisted family residing in the unit must be approved by the PHA. The family must promptly inform the PHA of the birth, adoption or court-awarded custody of a child. The family must request PHA approval to add any other family member as an occupant of the unit. No other person [i.e., nobody but members of the assisted family] may reside in the unit." And Section 982.551(h)(3) requires the family to "promptly notify the PHA if any family member no longer resides in the unit."
 {¶ 23} But the starting point to understand whether the DCD had the authority to terminate Smith's voucher should have been Section 982.552(c), Title *Page 9 
24, C.F.R., which is subtitled "Authority to deny admission or terminate assistance." A public housing authority may deny or terminate program assistance for any of the following reasons: "(i) If the family violates any family obligations under the program; * * * [or] (iv) If any member of the family has committed fraud, bribery, or any other corrupt or criminal act in connection with any Federal housing program."[7] (Although the code lists 11 grounds for termination of assistance, only two could have applied to the present case.)
 {¶ 24} Thus DCD could have only terminated Smith's Section 8 housing voucher if she had violated any family obligations under Section 982.551, Title 24, C.F.R. or committed fraud, bribery, or any other corrupt or criminal act. Although fraud and the violation of a "family obligation" are two separate and independent grounds for termination of Section 8 housing vouchers, we cannot broadly interpret the "family obligation" provision of Section 982.551 to permit DCD to terminate a Section 8 participant's benefits for any and all errors or omissions arising from the failure to submit true or complete information.
 {¶ 25} Instead we agree with the reasoning of Judge T.S. Ellis, III, of the United States District Court for the Eastern District of Virginia, who in Ellis v. Ritchie[8] noted that if Section 982.552(c)(1)(i), Title 24, C.F.R. permits a public housing agency to terminate benefits for any violation of a "family obligation," the interpretation of Section 982.551(b)(4) that implies a requirement of truth and completeness for the submission of documentation "would effectively permit the agency to terminate participants who make even trivial or minor errors in filling out required forms. Such an interpretation is unreasonable as it would render the fraud *Page 10 
provision of [Section 982.552(c)(1)(4)] superfluous and effectively relieve a public housing agency of the need to make a factual finding that a participant actually intended to deceive or defraud the agency. Indeed, it would permit the agency to rely solely on [Sections 982.552(c)(1)(i) and 982.551(b)(4)] in terminating benefits for both unintentional and intentional errors and omissions made in connection with recertification. Given that HUD promulgated [Sections 982.552(c)(1)(i) and 982.552(c)(1)(iv)] on the same date, the agency could not have intended that the latter provision swallow the former."[9]
 {¶ 26} Thus the correct legal standard for DCD to terminate Smith's Section 8 housing voucher was whether she had acted fraudulently by listing her sons as household members on her application and again on her recertification. Because the magistrate applied an incorrect standard of law, the magistrate's decision and the trial court's affirmance of that decision must be reversed. Smith's first assignment of error is sustained.
 VI. Smith's Statements were not Fraudulent {¶ 27} If the magistrate had applied the correct legal standard, DCD would have needed to demonstrate that Smith had committed fraud by listing her two sons as household members. No such showing was made.
 {¶ 28} When Smith filled out her application, she was asked to "list each person who lives in the household under Section 8." Smith listed her own name and both of her sons' names. And at that time, her sons stayed with her on the weekends, *Page 11 
on holidays, and during the summer, with the consent of her sons' caseworker in Kentucky. Nowhere on the application did it ask about legal custody.
 {¶ 29} Because neither the federal regulations nor DCD's administrative plan specifically define the meaning of a household member or family composition, we are only left with the general guidelines of Section 982.201, Title 24, C.F.R. and the code's requirement that "no other person [i.e., nobody but members of the assisted family] may reside in the unit."[10] Under this section, a family can include a single person or a group of persons including a child or children.[11] The code does not distinguish between children who spend time between two households, as the case may be with divorced parents, nor does it require that an adult have legal custody of a child for the child to be considered a household member. But the code does state that "a child who is temporarily away from the home because of placement in foster care is considered a member of the family."[12]
Based on these regulations, we are convinced that it was perfectly reasonable for Smith to have listed her children as household members because they spent weekends, holidays, and summers with her.
 {¶ 30} We further note, under DCD's own administrative plan, that participants in the Section 8 voucher program are only subject to immediate termination of their assistance if they commit a "Very Serious" violation. "Very Serious" violations include fraud, bribery, or other criminal acts in connection with the program. But "Serious" violations, including "[n]ot supplying information requested by the Housing Agency in a timely and complete manner" (emphasis added), only result in assistance termination if two violations occur within five years. *Page 12 
 {¶ 31} In light of the legal standard that the magistrate should have applied to the proceedings, we hold as a matter of law that there was no substantial evidence that Smith had acted fraudulently in listing her two sons as household members to secure a larger rent subsidy and a larger apartment. Because Smith had only committed a "Serious" violation by not disclosing that she did not have custody of her children, and because DCD failed to prove that Smith had fraudulently listed her two sons to gain a larger rent subsidy and a larger apartment, we hold that DCD did not have the legal right to terminate Smith's Section 8 Housing Choice voucher.
 VII. Conclusion {¶ 32} Because we sustain Smith's argument that the trial court erred in affirming DCD's termination of her Section 8 housing voucher, Smith's second assignment of error concerning Hamilton County's cross-examination on alleged prior bad acts is moot.
 {¶ 33} We reverse the judgment of the trial court affirming the magistrate's decision (which had affirmed DCD's decision to terminate Smith's Section 8 housing voucher) and remand this case so that the trial court can enter judgment in favor of Smith.
Judgment reversed and cause remanded.
HILDEBRANDT and WINKLER, JJ., concur.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] See The U.S. Department of Housing and Urban Development,Housing Choice Voucher Fact Sheet (last visited Mar. 16, 2007) at http://www.hud.gov/offices/pih/programs/hcv/about/fact_sheet.cfm.
[2] See generally, Section 982.551, Title 24, C.F.R.
[3] See Henley v. Youngstown Bd. of Zoning Appeals, 90 Ohio St.3d 142,147, 2000-Ohio-493, 735 N.E.2d 433.
[4] Id., citing Smith v. Granville Twp. Bd. of Trustees (1998),81 Ohio St.3d 608, 612, 693 N.E.2d 219, citing Dudukovich v. Lorain Metro.Hous. Auth. (1979), 58 Ohio St.2d 202, 206-207, 289 N.E.2d 1113.
[5] Id.
[6] Id., citing Lorain City School Dist. Bd. of Edn. v. State Emp.Relations Bd. (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264.
[7] Section 982.552(c)(i) and (iv), Title 24, C.F.R.
[8] See Ellis v. Ritchie (E.D.Va.1992), 803 F.Supp. 1097.
[9] Id. at 1102-1103.
[10] Section 982.551(h)(2), Title 24, C.F.R.
[11] Section 982.201(c)(1), Title 24, C.F.R.
[12] Section 982.201(c)(5), Title 24, C.F.R. *Page 1