**Charlene HILL, et al., Plaintiffs,**

v.

**John F. RICHARDSON, in his official capacity as Commissioner of the Indiana Department of Human Services, Defendant.**

**No. IP 87–232–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 5, 1990.

Kenneth J. Falk, Joanne Orr Van Pelt, Legal Services Organization of Indiana, Inc., Indianapolis, for plaintiffs.

Seth Lahn, Eaton Randles, Dept. of Human Services, Indianapolis, for defendant.

**MEMORANDUM ENTRY REGARDING APPROVAL OF STIPULATION OF SETTLEMENT AS TO ALL ISSUES EXCEPT ATTORNEYS' FEES**

TINDER, District Judge.

I. *Introduction*

The difficulty that people of lower economic means in this country have in obtaining adequate housing is not a new problem. Many solutions to this dilemma have been offered and attempted through the years, both through private and public efforts. The subject of this case is a housing subsidy program of the federal government, often called a "finders-keepers" program, that was designed to offer at least some assistance to those who could not otherwise afford adequate housing. This program also seeks to encourage a mixture of subsidized residents with non-subsidized residents in the private rental market. It is hoped that these noble goals will produce the side benefits of increasing the supply of rental housing available to the poor and avoiding the creation of new economic ghettos which many argue can be the result of publicly owned, subsidized housing projects.

This case involves one aspect of this housing subsidy program, specifically, the authority of the state of Indiana to administer and to regulate the program. The actual parties in interest are a class of beneficiaries of the program and the state of Indiana, which is represented by a policy-making state official.[1] However, private landlords, who both support and benefit from this program, are also interested in the outcome of this dispute, although not in

---

1. Before the decision in *Will v. Michigan Dept. of State Police,* —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the eleventh amendment to the United States Constitution usually precluded suit against the state, and a suit against a policy-making state official is a suit against the state. In *Will,* however, the Supreme Court ruled that, even apart from the eleventh amendment, a state cannot be sued in its own name and state officials cannot be sued in their official capacities for damages in federal or state court under

42 U.S.C. § 1983. However, a suit seeking the future enforcement of federal law is a permissible action. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979) (a federal court may enjoin state officials "to conform their future conduct to the requirements of federal law" (citing *Edelman v. Jordan,* 415 U.S. 651, 667–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974)).

the legal sense. A substantial number of landlords have written directly to this court about their concerns regarding this suit rather than seeking leave of court to join this case as parties in interest or to file amicus curiae briefs. The gist of the apprehension expressed in this correspondence is an understandable fear that the landlords who currently volunteer a large portion of the available housing for this program will withdraw such housing from the program if the state's ability to discipline the subsidized tenants is inhibited. Many wrote about chronic problems they have with a small number of tenant participants who abuse this program by intentionally causing physical damage to rental units before moving on to other housing subsidized through this program. Unless the state is authorized to terminate such abusers from this program, landlords submit that they are subject to the risk of having to accept these poor-risk tenants. Situations such as these pose substantial policy questions that highlight the difficulty of administering a program of this nature.

The plaintiffs are lower income persons who are receiving or will receive a housing subsidy benefit indirectly from the Department of Housing and Urban Development (HUD) under the provisions of Section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). On June 17, 1988, this court certified this cause as a class action and defined the class as all present and future participants in the Section 8 Existing Housing Program administered by the Indiana State Department of Human Services who are, or will be threatened, with the denial or termination of assistance for reasons other than those contained in 24 C.F.R. § 882.210. The defendant is the Commissioner of the Indiana Department of Human Service.[2]

In the complaint for declaratory and injunctive relief, the plaintiffs challenged the defendant's authority to deny new Certificates of Family Participation to applicants and current participants and to terminate current participants in the Section 8 program for reasons other than those listed in 24 C.F.R. § 882.210.[3] On December 19, 1988, this court issued an order preliminarily enjoining the defendant from denying, terminating, or threatening the denial or termination of Section 8 assistance for any reason other than those reasons specifically enumerated in 24 C.F.R. § 882.210. The plaintiffs had filed a motion for summary judgment on January 19, 1988, which was fully briefed and ripe for a ruling; however, the parties filed a Stipulation of Settlement as to All Issues Except Attorney's Fees on December 28, 1989. Pursuant to Federal Rule of Civil Procedure 23(e), the parties have provided notice of the proposed settlement to all members of the class and represent that the plaintiffs' counsel did not receive any objections to

**2.** This cause was originally brought against Jean Merritt, former executive director of the Indiana State Housing Board. Since the complaint was filed, however, there have been several organizational changes involving the housing board. First, the Indiana State Housing Board has been reorganized as part of the Indiana Department of Human Services, and the previous housing board is now known within the department as the Housing Services Unit. Second, Jean Merritt is no longer the Executive Director of this department. In the Notice by the Parties to the Court and Request to Enter a Final Judgment as to all Issues Except Attorneys' Fees and Costs, the parties request that the current Commissioner of the Department of Human Services, John F. Richardson, be substituted as the defendant, which this court GRANTS.

**3.** The plaintiffs also alleged in their complaint that the defendant had a policy of paying damage and rent claims filed by former landlords and then requiring reimbursement from participants prior to giving the participants notice of the claim and an opportunity to contest. This policy, according to the plaintiffs, denied them their right to procedural due process under the fourteenth amendment to the United States Constitution. This issue was resolved by this court's approval on June 16, 1988, of the parties' Stipulation to Partial Agreed Judgment that was filed on January 19, 1988. In that stipulation, the parties agreed that the defendant has a written policy that requires landlords to obtain a judgment in Small Claims Court before the defendant requires reimbursement from tenants. The plaintiffs agreed that this policy satisfies due process, and the defendants agreed to adhere to this policy.

the settlement and the defendant did not receive any comments from class members opposing the settlement. After reviewing the stipulation of settlement, this court finds it to be fair and equitable. Thus, this court GRANTS the parties' Notice by the Parties to the Court and Request to Enter a Final Judgment as to All Issues Except Attorneys' Fees and Costs, with the minor changes requested by counsel.[4] Because of the importance of this issue and the number of persons interested and impacted by the subject of supplying affordable, adequate housing for low income families, this court accompanies the final judgment in this cause of action with this entry, which explains the Section 8 program and discusses the legal issues involved in this case.

## II. *The Section 8 Existing Housing Program*

Section 8 establishes the housing assistance payments program that provides for various types of assisted housing. This litigation concerns only the Section 8 Existing Housing Program. *See* 24 C.F.R. §§ 882.101–.606. The purpose of the Section 8 program is to aid lower income persons in obtaining a decent place to live and to promote economically mixed housing. 42 U.S.C. § 1437f(a).

Congress has delegated its rule making authority to the Secretary of HUD to promulgate regulations in order to implement this program. *See* 42 U.S.C. § 1437f(g); 12 U.S.C. § 1701q(g). Accordingly, HUD provides funds to a state public housing agency (PHA), which is the Indiana State Department of Human Services in this case. The PHA determines whether an applicant for participation qualifies as a family and is income eligible. 24 C.F.R. § 882.209(a)(1). If approved, the PHA issues a Certificate of Family Participation when a Certificate becomes available. 24 C.F.R. § 882.209(b). A Section 8 Certificate entitles the holder to seek rental housing that complies with HUD rental rates (referred to as "fair market rent") and quality (referred to as "housing quality standards") as prescribed by 24 C.F.R. § 882.109. Thus, once a family is given a Certificate, it is the family's responsibility to locate such a rental unit. If the family finds a unit that is offered for rent by a willing landlord, then the PHA examines the unit and its environs, and if suitable, the family executes a lease with the private landlord.[5] The PHA then executes a Housing Assistance Payment (HAP) Contract with the private landlord. *Id.* Once the HAP contract is signed, the family becomes a participant in the Section 8 program. The participant family pays a portion of its adjusted monthly income to the owner of the unit as determined under 24 C.F.R. § 813.107, and the PHA pays the difference between the tenant payment and the maximum monthly rent as set out in the contract. 42 U.S.C. § 1437f(c)(3); 24 C.F.R. § 882.116. The participant also pays a security deposit to reimburse the owner for unpaid rent or other damages allowable under state law. If this amount is insufficient when the tenant vacates the unit, the owner may claim reimbursement from the PHA limited to the lesser of the amount owed or two months' rent. 24 C.F.R. § 882.112. The PHA may require the participant to reimburse it for any claims paid to the landlord. 24 C.F.R. § 882.210(c).

The grounds for the denial or termination of Section 8 assistance are set out in 24 C.F.R. § 882.210, which is as follows:

---

**4.** The prospect of settlement of this suit was first brought to the attention of the court in a stipulation of settlement filed on December 28, 1989. After the appropriate notice was given and the period of comment elapsed, on June 18, 1990, counsel for the parties filed a Notice by the Parties to the Court and Request to Enter a Final Judgment as to All Issues Except Attorneys' Fees and Costs, with the minor changes requested by counsel. The parties request that the incorrect citation contained in paragraph number two of the Stipulation of Settlement as to All Issues Except Attorney's Fees be changed to 24 C.F.R. § 882.118(a)(5) and that the Notice to the Class, which is the first attachment to the stipulation, reflect plaintiffs' counsel's new address and telephone number, all of which is GRANTED.

**5.** This is the origin of the reference to the policy as a "finders-keepers" program.

(a) This section states the grounds for denial of assistance to an applicant, or for denial or termination of assistance to a participant, because of action or inaction by the applicant or participant.

(b) The PHA may deny an applicant admission to participation in the program, may deny issuance of another Certificate to a participant who wants to move to another dwelling unit (see § 882.209(m)(1) and § 882.216(b)(1)(iv)), and may decline to enter into a Contract, or to approve a Lease, where requested by a participant, in the following cases:

(1) If the applicant or participant currently owes rent or other amounts to the PHA or to another PHA in connection with Section 8 or public housing assistance under the U.S. Housing Act of 1937.

(2) If the applicant (as a previous participant in the Section 8 program) or participant has not reimbursed the PHA or another PHA for any amounts paid to an Owner under a Contract for rent or other amounts owned by the Family under the Lease (see § 882.112(d)), or for a vacated unit (see § 882.105(b)).

(3) If the applicant or participant has committed any fraud in connection with any federal housing assistance program.

(4) If the applicant or participant has violated any Family obligation under the Section 8 Existing Housing Program as stated in § 882.118.

(5) If the applicant or participant has breached an agreement as described in paragraph (c) of this section.

(c) In the cases described in paragraphs (b)(1) and (2) of this section, the PHA may at its discretion offer the applicant or participant the opportunity to enter an agreement to pay amounts owed to a PHA or amounts paid to an Owner by a PHA. If the PHA elects to make such offer, the agreement shall be on terms prescribed by the PHA. The PHA may at any time deny or terminate assistance for breach of such agreement.

(d) In the following cases, the PHA may terminate housing assistance payments which are being made on behalf of the participant under an outstanding Contract:

(1) If the participant has committed any fraud in connection with any federal housing assistance program.

(2) If the participant has violated any Family obligation under the Section 8 Existing Housing Program as stated in § 882.118.

(3) If the participant has breached an agreement as described in paragraph (c) of this section. The provisions of this paragraph (d) shall not affect or limit the right of the PHA to exercise any Contract remedy against the Owner under an outstanding Contract, including the termination of housing assistance payments to the Owner (see § 882.211(c) and § 882.216(b)(2)(iii)).

(e) The Family's obligations as stated in § 882.118 include submission of required evidence of citizenship or eligible alien status. For a statement of circumstances in which the PHA is required to terminate housing assistance payments for the Family because of the Family's failure to submit evidence of citizenship or eligible alien status, see § 812.7(b)(1).

The plaintiffs contended that these are the sole reasons that a PHA may terminate a Section 8 participant or deny assistance to an applicant because of the tenant's actions or inactions. The defendant, on the other hand, argued that the above regulation does not provide an exclusive list and cited other regulations that allow the PHA to terminate or to deny Section 8 assistance as evidence of HUD's intent that 24 C.F.R. § 882.210 does not provide an exclusive list for denial or termination of Section 8 assistance. *See, e.g.,* 24 C.F.R. § 882.209(m)(2) (if a participant moves out of one PHA's jurisdiction, he or she is terminated unless admitted to another PHA's Section 8 program); 24 C.F.R. § 882.209(a)(2)–(3) (PHA determines whether an applicant qualifies as a Family and is income eligible and may provide for preferences in selection of applicants); 24 C.F.R. § 882.211 (dwelling unit must meet housing quality standards).

## III.  *Factual Background*[6]

The Indiana Department of Human Services administers the Section 8 program in various parts of the state.  Since there are not enough federal monies to assist all interested persons, there is a long waiting list to be considered for participation in the program.   J. David Roellgen, assistant commissioner of the Indiana Department of Human Services, acknowledged in his deposition that the role of the state was not to supply or to manage housing, but merely to supply payments to private landlords.

HUD issued a statement from its Office of the General Counsel that the reasons listed in 24 C.F.R. § 882.210 for denial and termination of Section 8 assistance due to an individual's action or inactions are exclusive.  Apparently, this is also the opinion of the local Indianapolis HUD office.  The state, however, took the position that it had the authority to terminate or to deny assistance because of an individual's actions or inactions for reasons other than those listed in 24 C.F.R. § 882.210.  Thus, for example, if a Section 8 participant was evicted by a private landlord, the state maintained that the participant could be terminated from the Section 8 program.  The state would terminate the participant, however, only if it determined on a case-by-case basis that the eviction was for "cause," according to Roellgen.  "Cause" included the tenant owing back rent, causing damage to the apartment or owing other obligations (such as utility charges).  The state would terminate these participants *regardless of whether* the state reimbursed the private landlord for these debts.  *See* 24 C.F.R. § 882.112 (state will pay for tenant caused damages in the maximum amount of two months' rent minus the tenant's damage deposit).

There was some dispute between the parties as to whether there were sufficient written standards governing the defendant's reasons for denying or terminating assistance.  The defendant contended that such standards were contained in the Indiana State Housing Board's Administra-tive Plan for the Section 8 Housing Assistance Program, the Equal Opportunity Housing Plan, and the HUD Handbook.  Furthermore, the defendant apparently argued that HUD's approval of the state's Administrative Plan and Equal Housing Opportunity Plan was an implied acknowledgement of the state's ability to expand the reasons for denying or terminating assistance under 24 C.F.R. § 882.210.

## IV.  *Discussion of Legal Observations*

The issue in this case was whether the defendant had the discretion to expand the reasons enumerated in 24 C.F.R. § 882.210 for denying or terminating Section 8 applicants or participants because of the individuals'. actions or inactions.  The state acknowledged that it had expanded the reasons specified in the regulation, but argued that the regulation did not present an exclusive list.  The stipulation of settlement provides, in part, that "[t]he reasons specified in 24 CFR § 882.210 shall be the only bases upon which the Indiana Department of Human Services (IDHS) may deny or terminate Section 8 assistance because of action or inaction by the Section 8 applicant or participant."  Based upon a review of the regulations and the legal precedent as set forth below, this court agrees with the parties' apparent conclusion that this is the legally correct interpretation of the regulation.

To determine whether the defendant has the discretionary authority to expand the scope of 24 C.F.R. § 882.210, this court begins by looking at the words of the regulation.  A reviewing court owes deference to an agency's construction of its own regulations.  *Exportal Ltda v. United States*, 902 F.2d 45, 50 (D.C.Cir.1990).  But, this deference is due *"only* when the plain meaning of the rule itself is doubtful or ambiguous. . . . Deference to agency interpretations is not in order if the rule's meaning is clear on its face." *Id.* (quoting *Pfizer, Inc. v. Heckler*, 735 F.2d 1502, 1509 (D.C.Cir.1984)); *cf. United States v. Ron Pair Enterps., Inc.*, 489 U.S. 235, 109 S.Ct.

---

**6.**  The following facts were set forth in the plaintiffs' Memorandum in Support of Summary Judgment.  The defendant did not contest them, unless otherwise noted.

1026, 1030, 103 L.Ed.2d 290 (1989) ("[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'") (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)); *Friedrich v. City of Chicago*, 888 F.2d 511, 514 (7th Cir.1989), *petition for cert. filed*, (U.S. January 29, 1990) (No. 89–1230) (stating that courts must also look at the "linguistic and cultural competence presupposed by the author of the statute"). An amendment to a provision cannot be disregarded as meaningless and, in fact, may be highly persuasive that the prior law was to the contrary. Furthermore, federal "legislative regulations are given controlling weight [as to the meaning of a federal statute] unless they are arbitrary, capricious, or manifestly contrary to the statute." (*Chevron, U.S.A., Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), *cited in Healea v. Bowen*, 871 F.2d 48, 50 (7th Cir.1988)). Finally, it is fundamental that regulations and orders of state administrative agencies may not prevail where they conflict with a valid enactment of Congress. U.S. Const., art. VI.

The regulatory section at issue in this case indicates that it "states the grounds for denial of assistance to an applicant, of for denial or termination of assistance to a participant, because of action or inaction by the applicant or participant." 24 C.F.R. § 882.210(a). There is nothing in 24 C.F.R. § 882.210 or in any other regulation that states that the PHA has the discretionary authority to impose additional grounds for denying or terminating assistance as a result of a tenant's actions or inactions.

As the plaintiffs point out in their summary judgment brief, the history of the regulation clearly supports its apparent meaning that 24 C.F.R. § 882.210 presents a "comprehensive" and "complete statement ... of the bases for denial or termination of assistance" under the Section 8 program. *See* 49 Fed.Reg. 12217 (March 29, 1984) (Comments). Prior to the promulgation of 24 C.F.R. § 882.210 on March 29, 1984, the federal regulations provided that PHA's could impose additional criteria for tenant eligibility beyond that enumerated in the regulations, provided that HUD approved of the additional criteria. 24 C.F.R. § 882.209(a)(3) (1983). However, much litigation ensued because the regulations did not contain a clear statement of the reasons that a PHA could deny or terminate assistance due to prior actions or inactions of the tenants. *See, e.g., Baker v. Cincinnati Metro. Hous. Auth.*, 675 F.2d 836 (6th Cir.1982); *Vandermack v. Housing Auth. of City of York*, 663 F.2d 436 (3d Cir.1981); *Kohl v. Housing Auth. of City of Bloomington, Ill.*, 537 F.Supp. 1207 (C.D.Ill.1982).

Perhaps in response to that litigation, HUD enacted 24 C.F.R. § 882.210, noting as follows:

> [T]he regulations should set out a comprehensive statement of the grounds not only for denial of initial selection for participation, but for termination or denial of further assistance to a current program participant because of an action or inaction by the family. The final rule includes therefore a new and complete statement, in a separate regulatory section (§ 882.210), of the bases for denial or termination of assistance because of the family's behavior.

49 Fed.Reg. 12217 (March 29, 1984) (Comments).

In this case, HUD's interpretation that the regulation provides an exclusive list for denying or terminating Section 8 assistance is consistent with the language of the regulation and is also consistent with the entire "finders-keepers" regulatory scheme. *See* 24 C.F.R. § 882.103. For example, the regulation regarding the selection for participation in the Section 8 program states as follows:

> The PHA shall not establish selection criteria based on the applicant's suitability as a tenant or expected behavior as a tenant. The Owner will select the tenant. The PHA's selection of an applicant for participation is not a representation by the PHA to the Owner concerning expected behavior of the Family in tenancy of a unit, or concerning the Family's suitability for tenancy.

24 C.F.R. § 882.209(a)(5).

In originally opposing the plaintiffs' request for summary judgment, the state's

citation to other sections of HUD's regulations that allow the PHA to terminate or to deny Section 8 assistance on other grounds to support an inference of the nonexclusivity of 24 C.F.R. § 882.210 was not persuasive. Simply because there are other regulatory sections that allow a PHA to deny or terminate Section 8 assistance, such as 24 C.F.R. § 882.209(m)(2), which allows a PHA to terminate a participant if he or she moves out of its jurisdiction and is not admitted to another Section 8 program, does not give the state discretionary authority to amend 24 C.F.R. § 882.210 by adding completely new reasons to deny or terminate Section 8 assistance based upon a person's actions or inactions.

Finally, while this court is sensitive to the state's desire to ensure the success of the program by presenting the landlords with only the most reliable tenants from a financial and behavioral perspective, the state has no authority in this case to amend or alter the federal regulatory scheme.[7] "[A] family unacceptable to one owner may be acceptable to another. Leaving screening of prospective tenants to the owner offers the family the maximum opportunity to find a unit in the local housing market." 49 Fed.Reg. 12221 (March 29, 1984) (Comments). Furthermore, there is "considerable administrative advantage to PHAs in avoiding screening for expected behavior or suitability as a tenant." *Id.* As mentioned earlier, the question of the extent to which the state should have authority to discipline the small number of subsidized tenants who would abuse this program is an important policy issue. Under our system of government, such policy questions are left to the legislative branch, which enacts the laws, and the executive branch, which administers them. To the extent that participating landlords would seek to have their concerns addressed in the administration of this program, they would do well to direct their efforts toward the

branches of government that make and administer policy. It would be inappropriate for the judicial branch to attempt to invade the province of the other branches in this regard.

## V. *Conclusion*

Based upon the aforementioned reasons, this court finds that the parties' stipulation of settlement in this cause of action is fair and equitable. Therefore, this court approves of the settlement and permanently enjoins the defendant, by a separate judgment, to carry out all of the provisions of the Stipulation of Settlement as to All Issues Except Attorneys' Fees.

## JUDGMENT AS TO ALL ISSUES EXCEPT ATTORNEY'S FEES AND COSTS

Come now the parties, having previously submitted their Stipulation of Settlement as to All Issues Except Attorney's Fees and having further submitted their Notice by the Parties to the Court and Request to Enter a Final Judgment and the court having reviewed said matters, finds that notice of the proposed settlement has been given pursuant to Federal Rule of Civil Procedure 23(e) and that the proposed settlement as represented by the Stipulation of Settlement is just, fair and equitable and should be approved.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1. This cause is properly certified as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) with a class defined as follows:

All present and future participants in the Section 8 Existing Housing Program administered by the Indiana State Department of Human Services who are, or will be threatened with the denial or termination of assistance for reasons other than those contained in 24 C.F.R. § 882.210.

IT IS FURTHER ORDERED that defendant is hereby permanently enjoined to

---

7. HUD's approval of the state's administrative plan and equal housing opportunity plan does not allow the state to expand the list of reasons in 24 C.F.R. § 882.210. Even if HUD officials knowingly approved the state's policy concerning terminations and denials, that approval does not supersede the regulation.

carry out all provisions of the Stipulation of Settlement as to all Issues Except Attorney's Fees of December 28, 1989, with the exception of the citation contained in paragraph 2 of said Stipulation which is hereby ORDERED to read 24 C.F.R. § 882.118(a)(5) and the address of plaintiffs' counsel as the Notice to the Class (Attachment 1) which shall be changed to reflect counsel's new address and telephone number. In all other respects all paragraphs of the Stipulation are hereby incorporated by reference and made the ORDER of this court.

IT IS FURTHER ORDERED that this court shall hear the issues of plaintiffs' request for attorney's fees and costs at a later time upon proper application by plaintiffs.

IT IS FURTHER ORDERED that this court shall retain continuing jurisdiction over the parties with regard to this permanent injunction.

ALL OF WHICH IS ORDERED.