In re Michelle E. SWEENEY, Debtor.

Michelle E. SWEENEY, Plaintiff,

v.

HOUSING AUTHORITY OF CHESTER
COUNTY, Defendant.

Bankruptcy No. 97–32064DAS.
Adversary No. 97–1130DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 2, 1997.

William J. Prestia, West Chester, PA, for Debtor.

Alan J. Jarvis, Coatesville, PA, for Landlords.

George Raleigh, Parke, Barnes, Spangler & Bortner, PC, West Chester, PA, for HACC.

Edward Sparkman, Philadelphia, PA, Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Presently before us in the individual Chapter 13 bankruptcy case of MICHELLE E. SWEENEY, now known as Michelle Sweeney Pennington ("the Debtor"), are (1) a motion seeking relief from the automatic stay ("the Motion") filed by the Debtor's landlords, John T. and Alsenia Fields ("the Landlords"); and (2) the Debtor's adversary proceeding ("the Proceeding") against the HOUSING AUTHORITY OF THE COUNTY OF CHESTER ("HACC"), appealing HACC's decision to terminate her Section 8 housing subsidy, brought to us by removal of a petition seeking review of the termination decision from the Court of Common Pleas of Chester County, Pennsylvania ("the CCP"), by the Debtor.

After receiving evidence regarding the termination of the Debtor's Section 8 certificate in a *de novo* hearing, we conclude that the termination was not justified. Specifically, we find that there is no evidence or rational basis on which to deny assistance to the Debtor on the ground that she inaccurately reported her family composition, and we find that her failure to report her temporary employment in writing was not sufficiently material to justify the termination of her assistance. Accordingly, we will order that her Section 8 certificate be reinstated and will not grant the relief sought in the Motion on the conditions that the Debtor promptly assumes the parties' lease and that she obtains confirmation of a plan including, as a administrative expense, the repayment of any financial assistance improperly received by her due to the omission of her employment income in calculating her subsidy to HACC.

### B. PROCEDURAL AND FACTUAL HISTORY

The Debtor initiated the underlying bankruptcy case on October 3, 1997. No meeting of creditors nor confirmation hearing has been scheduled in that case as of this date.

■ Very soon after the case was commenced, on October 14, 1997, the Landlords filed the Motion, therein seeking authorization to evict the Debtor from a home which she rented from them located at 625 East Chestnut Street, Coatesville, Pennsylvania ("the Premises"), pursuant to a state court judgment for possession of the Premises. A hearing was scheduled on the Motion on November 13, 1997, at which time the Husband–Landlord and the Debtor and their respective counsel appeared. In the course of a colloquy at that hearing, we were apprised by the Landlords' counsel that the Landlords had not received rent from or on behalf of the Debtor since she moved into the Premises on April 23, 1997, and had therefore obtained and were attempting to enforce their unappealed judgment for possession.[1] The Debtor's counsel explained that the Debtor had rented the Premises under a Section 8[2] certificate which had been terminated by HACC effective on the date of her relocation

---

1. The entry of a judgment for possession does not "terminate" a lease under applicable Pennsylvania law because the tenant retains the right to cure the rental deficiency and preserve the tenancy at any time prior to actual valid and complete eviction. *See In re Whitsett*, 163 B.R. 752, 753 (Bankr.E.D.Pa.1994); *In re Karfakis*, 162 B.R. 719, 727 (Bankr.E.D.Pa.1993); and *In re Sudler*, 71 B.R. 780, 784 (Bankr.E.D.Pa.1987).

2. "Section 8" refers to Section 8 of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f. The Section 8 program provides low-income tenants with a subsidy towards rent of a participant unit, requiring the tenants themselves to pay no more than thirty (30%) percent of their adjusted income, 42 U.S.C. §§ 1437f(c)(3)(B)(1), 1437a(a)(1), with the balance of the established rent paid by the federal government, *see* 42 U.S.C. § 1437f(c)(1), under a program administered by local housing authorities such as HACC. *See* 42 U.S.C. § 1437f(b).

into the Premises on April 23, 1997, after a fire in her previous Section 8 unit at 163 West Lincoln Highway, Coatesville, Pennsylvania ("the Lincoln Premises"). Counsel further explained that the Debtor had appealed the decision terminating her Section 8 certificate, but had received an unsuccessful decision in an administrative appeal before an HACC hearing officer. However, she had appealed this decision further to the CCP.

The parties agreed that, if the Debtor's Section 8 certificate were reinstated, most of the delinquent back rent would be repaid through the subsidy. The Landlords indicated some dissatisfaction with the Debtor as a tenant, but mainly argued that it was unreasonable to deter their eviction efforts for an indefinite period of time waiting for the issue of the propriety of the Debtor's termination of assistance to be resolved by the CCP, during which time they would receive no rent for the Premises. We attempted to accommodate both parties by suggesting that the Debtor immediately remove the CCP action to this court and, if she did so, that we would carry the Motion to an expedited date of a hearing on the removed Proceeding on November 25, 1997. This resolution was memorialized in our Order of November 13, 1997, in which it was also noted that it was agreed that the factual allegations of the Motion would be deemed admitted by the Debtor, and in which we stated that we would most likely grant the Motion if the Debtor failed to promptly prevail in restoring her Section 8 certificate in the removed Proceeding.

The Debtor's pleading effecting removal, styled as a "Complaint Seeking Review of Wrongful Termination of Debtor's 'Section 8' Housing Assistance Certificate," attached the adverse decision of the administrative officer of June 26, 1997. Therein, the hearing officer upheld three grounds asserted by HACC in support of termination of the Debtor's Section 8 certificate: (1) her failure to report in writing accurate information concerning her income from employment and the number of children in her household; (2) the Debtor's failure to report that her husband, Dorian Pennington, resided in the Premises with her family; and (3) a violation of the "One Strike and You're Out" policy in light of

Pennington's alleged drug-related criminal activity. On November 25, 1997, counsel for the Landlords, the Debtor, and HACC appeared for the trial of the Proceeding, per our Order of November 13, 1997. HACC graciously agreed not to oppose the removal of the CCP action to this court and was prepared to proceed on the merits. *See also* page 100 n. 3 *infra.* HACC also graciously informed the court that it was unable to continue to rely on the "One Strike and You're Out" policy as a ground for termination because its evidence of alleged drug-related criminal activity of Pennington consisted of an arrest occurring over a year prior to termination of the Debtor's Section 8 certificate, whereas the applicable Regulation limits actionable drug violations to those occurring within one year of the termination proceeding. 24 C.F.R. § 982.553(b).

█ The first issue to be addressed was the applicable procedure and standard of review for this court in deciding the Proceeding. Although the HACC suggested that 2 Pa.C.S. § 704, relating to appeal from decisions of a "Commonwealth agency," was relevant, we indicated that we believed that these issues were controlled by 2 Pa.C.S. § 754. The particular provision we deemed applicable was 2 Pa.C.S. § 754(a), which provides that,

> [i]n the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

Discussing this section in an analogous setting, it was held, in *McLaughlin v. Centre County Housing Authority,* 151 Pa.Cmwlth. 292, 294, 616 A.2d 1073, 1074–75 (1992), that a common pleas court, sitting as was this court in lieu of the CCP, had appropriately proceeded in an appeal of a Section 8 certificate termination by conducting a *de novo* hearing where there was no transcription of the testimony from the housing authority's administrative proceeding. Implicit in the *McLaughlin* decision on this point is the determination that a housing authority is in-

deed a "local government agency" as that term is used in Pennsylvania administrative law, as opposed to a "Commonwealth agency." *See* 2 Pa.C.S. § 101 (providing definitions of "Commonwealth agency" and "Local agency."). This classification makes sense intuitively, since housing authorities are independent agencies organized on a local basis under federal as opposed to state regulatory law, and HACC does not contend otherwise. Accordingly, it is clear that 2 Pa.C.S. § 704, which is applicable to "Commonwealth agencies" and provides for only deferential review of such agencies' decisions, is not determinative of the standard of review in this case. Here, because there was no transcription constituting the full record of the proceeding before HACC, § 754(a) is applicable, and a *de novo* hearing is a viable option thereunder.[3]

The Debtor's case consisted mainly of her own testimony, with short supportive testimony from Pennington and her 14–year–old daughter, Turquoise Trowery. With respect to her failure to report income, the Debtor stated that her sole income had been welfare benefits until late October 1996, when she became employed as a school bus driver through the end of 1996–97 school year. She testified that, shortly thereafter, in the second week of November, she telephoned Marissa Norman at the HACC office, and informed Norman of her new job and increased income. Shortly thereafter, in December 1996, HACC notified her that it had increased her rent from $27 per month to $60 per month, effective February 1997. The Debtor assumed that this action was in response to her report to Norman. According to the Debtor, whenever she had previously had a change in income, she reported same to HACC by telephone, not in writing, and HACC, like Norman in this case, always accepted information from her in this fashion without objection.

The issue concerning the Debtor's household composition arises out of questions concerning the residency of Pennington and her two oldest children, Turquoise and Jeremy Trowery (11). Her other children are Pedro Donato (8) and Dorian Pennington, Jr. (2). Although she testified that she married Pennington on November 3, 1995, the Debtor further contended that the two never resided together because it was her understanding that, under Section 8, she was not permitted to have any adult person, including a new spouse, move in with her. Instead, she claimed that Pennington continued to reside with other members of his family who lived in the immediate vicinity, and that he maintained a relationship with the Debtor by visiting her frequently and occasionally staying at her house until very late, *e.g.*, 3:00 A.M., but not remaining overnight.

---

**3.** For jurisdictional purposes, this factor makes the Proceeding before us distinct from the matter at issue in *In re Perry*, 86 B.R. 388 (E.D.Pa.1988), wherein we granted the defendant's motion for abstention to state proceedings, and we questioned our ability to take jurisdiction over a case that was in essence an appeal from a state administrative agency. Unlike *Perry*, the fact that we must have a *de novo* hearing in this case means that we are not sitting as an appellate court and reviewing a factual record developed in another forum. Instead, we are hearing the case for the first time in an original proceeding. Federal courts are generally permitted to assume jurisdiction over cases in this posture. *Cf. Shamrock Motors, Inc. v. Ford Motor Co.*, 120 F.3d 196 (9th Cir.1997) (ruling that federal district court lacked jurisdiction to hear an appeal removed from a state administrative agency when the role of the district court would be to review a factual record developed in the administrative proceeding under a deferential standard of review). *Accord, International College of Surgeons v. City of Chicago*, 91 F.3d 981, 988–89 (7th Cir.1996),

cert. granted, —— U.S. ——, 117 S.Ct. 1424, 137 L.Ed.2d 534 (1997); *Armistead v. C & M Transport, Inc.* 49 F.3d 43, 47 (1st Cir.1995); and *Fairfax County Redevelopment & Housing Authority v. W.M. Schlosser Co.*, 64 F.3d 155 (4th Cir. 1995). *But see Range Oil Supply Co. v. Chicago, R.I. & P.R. Co.*, 248 F.2d 477 (8th Cir.1957) (allowing an appeal of a state administrative proceeding to be removed to federal court without considering the standard of review or the role that the district court would assume in deciding the case). The instant matter is also distinct from that at issue in *Perry* in that it involves the entitlement of the Debtor to receive benefits under federal as opposed to state law, and the exercise of jurisdiction by federal bankruptcy courts is limited in this context in light of the fact that the exercise of jurisdiction by federal bankruptcy courts must be deferential to state courts on state law issues. *See* 28 U.S.C. § 1334(c); and *In re R.T. Opdenaker & Sons, Inc.*, 1996 WL 332403, at *5–*6 (Bankr.E.D.Pa. June 11, 1996) (court declines to abstain from deciding a *federal* constitutional issue).

HACC countered by confronting her with the fact that Pennington had given the Lincoln Premises as his own address to the local police and prison authorities in the past. The Debtor acknowledged Pennington's use of her prior address, but explained that Pennington merely used this address as his mailing address.

As to the residence of the Debtor's two oldest children, HACC, per its witness, case manager Robert J. Caldwell, alleged that the Debtor falsely reported to him their residency with her more than half of the time when questioned by him in the course of HACC's assessment of the size requirements of the Debtor's need for a new unit following a fire at the two–bedroom Lincoln Premises. At the hearing, allegedly consistent with her statements to Caldwell, the Debtor indicated that she had four children, but that the two oldest children lived in a shared custody arrangement with her and their father in which the children were with the father slightly more than half of the time. By way of further explanation, the Debtor stated that the father did not live far away and that these children alternated between living with her and their father, spending about a week or two in each of their homes. When asked by Caldwell whether the children resided with her more than six months out of the year, the Debtor, not considering this question to be an inquiry as to whether they lived with her more than half of the time, responded "Yes." Based on that answer, HACC assumed that she meant that all four children lived with her more than half of the time, and that she qualified for a four-bedroom home such as the Premises to which she was assigned.

The brief testimony offered by Pennington and Turquoise supported the Debtor's statements. Echoing the Debtor, Pennington emphasized that the parties' decision to marry was supported by "religious reasons" (apparently due to the birth of their common child) and that he planned on one day residing with the Debtor when he was able to afford a place for the entire family to live. When Turquoise testified, she explained how she and her younger brother rotate between living with their father and mother, but stated that she believed that they spent more of their time with their father.

Caldwell was the only witness called by HACC. He contradicted the Debtor's claim that her rent was increased as a result of any effort on the Debtor's behalf to report an increase of income based on her employment. Instead, he claimed that her rent increase was the result of information HACC received from the Department of Welfare indicating that the Debtor was deriving a certain amount of income from public assistance and child support benefits. He also disputed the Debtor's statement that HACC would accept new income information from a Section 8 participant verbally over the phone. To the contrary, he testified that such information must be supplied in writing, or if that is not possible for some reason, a participant may come to HACC's office and supply their income information personally. He also pointed out that, in the proceeding before the hearing officer, the Debtor had not mentioned any telephone calls, but rather had stated that she was "unaware" of any requirement to report a change in income. When questioned whether HACC always would terminate a tenant due simply to a failure to report such a change in writing, Caldwell answered in the negative, but contended that the instant action was prompted because of HACC's difficulties with the Debtor in the past, which was supported by a form which HACC entered into evidence without objection containing a "file review" which highlighted various historical occurrences during the period of the Debtor's participation in Section 8 from 1988 to date.

Called back in rebuttal, the Debtor disputed Caldwell's contention that receipt of support payments had augmented her income, stating that she did not receive any support for any of her children, but was in fact herself liable for support of the two Trowery children to their father. She also stated that she had not mentioned the telephone call to HACC at the administrative hearing because she had forgotten it at the time.

## C. DISCUSSION

The law relevant to the pertinent issue of when a Section 8 tenant may have a certifica-

tion terminated is recited in 24 C.F.R. §§ 982.552(b), (c) as follows:

(b) *Grounds for denial or termination of assistance.* The HA [housing authority] may at any time deny program assistance for an applicant, or terminate program assistance for a participant, for any of the following grounds:

(1) If the family violates any family obligations under the program (see § 982.551).

(2) If any member of the family has ever been evicted from public housing.

(3) If an HA has ever terminated assistance under the certificate or voucher program for any member of the family.

(4) If any member of the family commits drug-related criminal activity, or violent criminal activity (see § 982.553).

(5) If any member of the family commits fraud, bribery or any other corrupt or criminal act in connection with any federal housing program.

(6) If the family currently owes rent or other amounts to the HA or to another HA in connection with Section 8 or public housing assistance under the 1937 Act.

(7) If the family has not reimbursed any HA for amounts paid to an owner under a HAP contract for rent, damages to the unit, or other amounts owed by the family under the lease.

(8) If the family breaches an agreement with the HA to pay amounts owed to an HA, or amounts paid to an owner by an HA. (The HA, at its discretion, may offer a family the opportunity to enter an agreement to pay amounts owed to an HA or amounts paid to an owner by an HA. The HA may prescribe the terms of the agreement.)

(9) If a family participating in the FSS program fails to comply, without good cause, with the family's FSS contract of participation.

(10) If the family has engaged in or threatened abusive or violent behavior toward HA personnel. .

(c) *HA discretion to consider circumstances.*—(1) In deciding whether to deny or terminate assistance because of action or failure to act by members of the family, the HA has discretion to consider all of the circumstances in each case, including the seriousness of the case, the extent of participation or culpability of individual family members, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.

Of these grounds, subsection (1) on family obligations seems to be the most directly applicable; subsection (5) on fraud is conceivably applicable. Subsection (4) on drug related and violent criminal activity was originally at issue but, as was mentioned at page 99 *supra*, was withdrawn as a ground for termination by HACC at the trial of November 25, 1997. Section 982.551, 24 C.F.R. § 982.551, concerning a participant family's obligations, dictates among other things that the family must provide the housing authority with any information necessary to administer its program, 24 C.F.R. § 982.552(b)(1); information necessary for the housing authority to conduct annual and interim reexaminations of family income and composition, 24 C.F.R. § 982.552(b)(2); and information concerning changes in family composition as they occur. 24 C.F.R. §§ 982.552(h)(2), (3).

In purported furtherance of these Regulations, HACC includes the following statement just above the signature of the head of household on forms requiring the party completing the form to designate family composition and income:

I, do hereby swear and attest that all of the information above about me is true and correct. I also understand that all *changes* in the income of any member of the household as well as *any changes* in the household members must be reported to the Housing Authority in *WRITING IMMEDIATELY.*

The Debtor filled out and signed such forms on August 27, 1996, apparently in the course of an annual recertification, and on April 23, 1997, when she moved. HACC contends that the Debtor violated these reporting requirements with respect to her alleged failure to report her income from employment on and after October 1996 and in allegedly incorrectly failing to report the residence of her husband and the non-residence of her two oldest

children in the Premises. HACC further argues that, when considered in connection with her history as a Section 8 recipient, these violations warrant termination of the Debtor's Section 8 certificate.

**█]** The starting point in our analysis is a recognition of "[t]he difficulty that people of lower income means in this country have in obtaining adequate housing." *Hill v. Richardson*, 740 F.Supp. 1393, 1393 (S.D.Ind. 1990). While any individual's loss of any rights through forfeiture are "odious" and "disfavored" in the law, *see Sudler, supra*, 71 B.R. at 785, the loss of a Section 8 certificate, like the loss of a public housing leasehold, is a matter "upon which the Tenant's entire economic status is dependent," *In re Day*, 208 B.R. 358, 367 (Bankr.E.D.Pa.1997), rendering a Section 8 certificate "a governmental license, permit, charter, franchise, or other similar grant' of the highest order," *id.*, in the eyes of a Section 8 tenant. Such a right should not be taken from any such tenant lightly, but only for reasons which are at once culpable and significant.

As a second point, we note that several cases have questioned whether a housing authority has the power to expand the specific grounds for the termination of a Section 8 certificate beyond those expressly enumerated in 24 C.F.R. § 982.552(b) and 982.551(b) through (m), as quoted in part at page 102 *supra*. *See Richmond Tenants Organization v. Richmond Redevelopment & Housing Authority*, 751 F.Supp. 1204, 1212 (E.D.Va. 1990); *Hill, supra*, 740 F.Supp. at 1397–99; and *Hann v. Housing Authority of City of Easton*, 709 F.Supp. 605, 608 (E.D.Pa.1989).

As a third point, we note our own decision relating to the Section 8 program in *Whitsett, supra*, 163 B.R. at 753–55, holding that a tenant's violations of the terms of a lease contract must be deemed material before they can serve as a basis for termination.

**█** Thus, although we find it plausible that the Debtor may have violated at least one of the HACC's regulations, we are unable to conclude that the suggested violations

warrant the drastic measure of terminating the Debtor from the Section 8 program. We are guided in reaching this determination by the contents of 24 C.F.R. § 982.552(h), wherein housing authorities are expressly granted the discretion to consider all of the surrounding circumstances when deciding whether to terminate a participant's Section 8 benefits, including the culpability of the head of the household and the impact of termination on other household members. In this instance, consideration of the Debtor's status as the custodial parent to several young children and our finding of a low level of culpability militate against termination.

Assuming *arguendo* that the Debtor failed to properly report her income or the residency status of her husband and two oldest children, these errors were not proven to be culpable. For instance, HACC presented no evidence regarding the amount of the Debtor's income while employed as a school bus driver compared to her welfare benefits, thus leaving us with no idea of how much she may have benefitted, if at all, by not reporting this income, or, conversely, how much HACC may have lost thereby.[4] There is apparently no element of fraudulent concealment, because the fact of the Debtor's employment was apparently freely disclosed on the form completed by the Debtor upon her relocation. It therefore appears that this fact was first disclosed by the Debtor herself rather than discovered from some other source. Thus, it is important to note that HACC's allegations do not support the conclusion of calculated falsification of information by the Debtor, as would be the case if, for example, she had given incorrect data to HACC in the course of the recertification process. By way of contrast, all that HACC alleges is the Debtor's failure to update the income information immediately in writing. Although the Debtor's conduct was therefore not in compliance with HACC policy, it is not nearly so culpable as supplying false information. HACC raises no issue that she intentionally inaccurately reported her income at any time.

---

4. In any event, our disposition includes a requirement that the Debtor recompense the HACC for any financial benefits which she received

and/or HACC suffered as a result of the Debtor's failure to pay her correct share of the rentals due for under-reported income. *See* page 105 *infra*.

While the HACC rule that a tenant disclose income changes immediately in writing constitutes a logical means of minimizing disputes regarding income changes, the question remains whether violation of this written notice requirement is, in this case, improperly being interpreted as an additional ground for termination of the Debtor's Section 8 benefits. It will be recalled that the Debtor testified that she made a telephone call to HACC conveying the data about her employment, and there is no evidence purporting to rebut this testimony. Cf. *In re Armstead v. U.S. Dept. of Housing and Urban Dev.*, 815 F.2d 278, 281–82 (3d Cir.1987) (federal agency's evidence that it did not log any calls from the debtor, as was its "usual practice" if a call were received, was found insufficient to overcome the plaintiff's testimony that she had in fact called the agency). Terminating the Debtor's Section 8 benefits simply because she communicated her employment orally instead of in writing would, in our view, constitute exaltation of form over substance, cf. *In re Huderson*, 96 B.R. 541, 548–51 (Bankr.E.D.Pa.), aff'd, CA. No. 89–2152 (E.D.Pa. August 9, 1989) (failure to document facts sworn to by applicants for federal benefits was found not to be a sufficient basis for denial of benefits despite a requirement that documentation be provided), and would not constitute the requisite *material* failure to comply with applicable rules. Cf. *Whitsett, supra*, 163 B.R. at 753, 754 (termination of a Section 8 lease was improper when it was based on the alleged failure of the tenant to report income when the tenant testified that she left her landlord a note with the information which was not received by the landlord). Thus, the Debtor's failure to provide immediate written notice of her employment and change of income to HACC should not result in the loss of her Section 8 certificate.

Similarly, with regard to the residency of Pennington in the Premises, it may well be immaterial that he may have been living in the Premises since we do not know the amount of, or even whether, he earned any income. *Compare Zajac v. Altoona Housing Authority*, 156 Pa.Cmwlth. 209, 212, 626 A.2d 1271, 1273 (1993), appeal denied, 537 Pa. 627, 641 A.2d 591 (1994) (individual erroneously

not disclosed as a resident of a Section 8 recipient's household earned over $25,000 annually). If, indeed, Pennington was living in the Premises and earning an income, and the Debtor was misreporting his status in a purposeful attempt to shield his income from inclusion in the calculation of her share of the rent, then HACC may have demonstrated a culpable violation of the regulations. However, no such evidence was presented. Furthermore, we note that, except for the rather flimsy evidence that Pennington used the Debtor's prior address, the HACC presented no evidence that Pennington did in fact reside with her family in the Premises.

With respect to the issue of the residency of the Debtor's two oldest children, we find the Debtor to have committed no violation of the applicable rules and Regulations at all. In her shared custody arrangement with the father, the Debtor appears to have had the children slightly less than half of the time, which is not quite what she allegedly reported when asked that specific question by Caldwell. We believe that the Debtor misunderstood Caldwell's question and merely meant to convey to him that, in at least six months out of the year, the Trowery children spent considerable time in her household. Any benefits flowing to the Debtor from any false disclosure on this subject are, again, doubtful. No evidence was presented that, if the Debtor had admitted to having the oldest children even as infrequently as one-third of the time, she would not have nevertheless been entitled to a four-bedroom residence. Logic dictates that there should have been no difference, because a teen-aged girl's even part-time sharing of a room with her young brothers would have been most awkward.

Thus, none of these grounds relied upon by HACC to justify the termination of the Debtor's Section 8 participation appear sufficiently significant to justify such action. Nor does the list of other alleged inequities by the Debtor over the past nine years referenced by Caldwell as the justification for such a seemingly harsh decision support same. The worst of the recitations appear to be that the Debtor missed ten reexamination appointments (out of how many is not indicated) in eight years, one report that in

1991 the Debtor damaged her rental premises, and a notation that in 1992 the debtor failed to report the absence of one of her children from her household, who later returned in 1994. These recitations do not appear to us to constitute a very bad record over such a long period. Therefore, considered singularly or as a whole, none of the Debtor's allegedly wrongful actions appear sufficiently material to warrant the forfeiture of such benefits of the highest order of importance to the Debtor's economic status.

We recognize that this decision differs from that reached by the HACC hearing officer. However, it appears that the hearing officer not only permitted Caldwell to recite blatant hearsay at the administrative hearing, but credited said evidence over competent contrary evidence submitted by the Debtor. *See, e.g., Clark v. Alexander,* 85 F.3d 146, 150 (4th Cir.1996), citing *Goldberg v. Kelly,* 397 U.S. 254, 266–71, 90 S.Ct. 1011, 1019–22, 25 L.Ed.2d 287 (1970); and *Zajac, supra,* 156 Pa.Cmwlth. at 215–16, 626 A.2d at 1275 (administrative hearing in which the propriety of the termination of Section 8 benefits is considered must allow the tenant to confront and cross-examine witnesses, and therefore the findings in such a proceeding cannot be based solely on hearsay) It is unclear whether the hearing officer would have reached the same conclusion had the hearsay evidence and the purported violation of the "One Strike and You're Out" policy been removed from his consideration. *Cf. Ellis v. Ritchie,* 803 F.Supp. 1097 (E.D.Va. 1992) (termination of tenant's Section 8 benefits for admittedly repeatedly falsely reporting that she had no bank account was nevertheless reversed due to the use of improper procedures).

For the foregoing reasons, we will reverse HACC's decision to terminate the Debtor's Section 8 certificate. We will not, however, allow the Debtor to escape without fully recompensing the Landlords and HACC for any damages suffered by them in connection with this matter, because she is technically chargeable with not reporting her income and correct family composition in writing. Therefore, as conditions for the Debtor's continued participation in Section 8 we will require her to submit to a reexamination in which she must accurately disclose her income to HACC so that her rent since October 1996 may be properly calculated on a retroactive basis. We will classify any additional payments due to HACC as a result of the reexamination as nondischargeable administrative expenses, necessary to preserve the benefit of her retention of her Section 8 certificate, even though any such liability is arguably dischargeable in this case. *But see In re M. Frenville Co.,* 744 F.2d 332, 336–37 (3d Cir.1984), *cert. denied sub nom. M. Frenville Co. v. Avellino & Bienes,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) (right to payment arising as a result of postpetition occurrences is nondischargeable); and *In re B. Cohen & Sons Caterers, Inc.,* 143 B.R. 27 (E.D.Pa.1992) (claim arising from a situation conferring a benefit on the debtor is properly classified as an administrative claim). Also, we will require that the Debtor promptly assumes her lease and promptly repays to the Landlords all sums found to be past due owing to them, if any, as a result of an accurate reexamination of the Debtor's income and determination of her proper financial obligations. *See In re Sims,* 213 B.R. 641, 644–45 (Bankr.W.D.Pa.1997); and *Whitsett, supra,* 163 B.R. at 755–56.

## D. CONCLUSION

An order consistent with this decision will be entered.

### ORDER

AND NOW, this 2nd day of December, 1997, upon consideration of the record made on November 25, 1997, in reference to the above-captioned adversary proceeding ("the Proceeding"), the decision in which is relevant to our disposition of the Motion ("the Motion")of John T. Fields and Alsenia Fields ("the Landlords") for relief from he automatic stay to evict the Debtor and her family from their federally–subsidized housing unit at 625 East Chestnut Street, Coatesville, Pennsylvania ("the Premises"), it is hereby ORDERED AND DECREED as follows:

1. Judgment in the Proceeding is entered in favor of MICHELLE C. SWEENEY ("the Debtor") and against the HOUSING

AUTHORITY OF CHESTER COUNTY ("HACC").

2. On the condition that the Debtor cooperate fully with HACC in effecting a complete reexamination of her income and family composition since October 1996, the decision of HACC to terminate the Debtor's Section 8 housing certificate is VACATED and the Debtor is to be restored to full eligibility status in that program as of April 23, 1997.

3. HACC shall promptly remit all Section 8 subsidies due to the Landlords.

4. The automatic stay shall remain in effect as to the Landlords in reference to the Premises and HACC in reference to the Debtor's restored Section 8 certificate on the conditions that the Debtor fully comply with paragraph 2 of this order and that she proceeds as follows in this case:

    a. Files a motion to assume her lease with the Landlords before December 15, 1997, and obtains an order allowing assumption of the lease at a hearing scheduled on

TUESDAY, JANUARY 13, 1998, at 9:30 A.M., which shall be held in Bankruptcy Courtroom No. 1, Second Floor, 900 Market Street, Philadelphia, PA 19107.

    b. Promptly confirms a Chapter 13 plan of reorganization in this case which fully compensates the HACC, as an administrative expense, for any sums determined to be due to it as a result of the recalculation of the Debtor's obligations to HACC under the Section 8 program since October 1996 pursuant to the reexamination required in paragraph 2 of this Order.

5. If the Landlords or HACC believe that the Debtor has not performed any of the conditions set forth in this Order hereafter, they may provide written notice to the Debtor and her counsel listed below and, if performance is not made to the satisfaction of the Landlords or HACC, and the Debtor does not file an expedited Motion for relief from this Order within seven (7) days, the Landlords or HACC may certify same to the court and, after an Order is entered by this court, may proceed with any state court remedies to gain possession of the Premises or termi-

nate the Debtor's Section 8 certificate, respectively.